IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MARK LAZZO, | ) |
|                         Plaintiff, | ) |
| vs. | ) Case No. |
| FRONTIER WEALTH MANAGEMENT, LLC | ) |
|                         Defendant. | ) **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, Mark Lazzo, by and through counsel Rick W. Griffin and Samantha M. Woods of Martin, Pringle, Oliver, Wallace & Bauer, files this Petition against Frontier Wealth Management, LLC ("Frontier"), stating his claims as follows:

1. Mark Lazzo is an individual residing in Sedgwick County, Kansas.

2. Frontier is a Missouri limited liability company with its principal place of business at 4435 Main Street, Suite 650, Kansas City, Missouri 64111. Its registered agent for service of process is Troy Kerr at 4435 Main Street, Suite 1100, Kansas City, Missouri 64111.

### Jurisdiction and Venue

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C § 1332, and 28 U.S.C. § 1367.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

1

## Allegations

### *Frontier is a Registered Investment Advisor and Owes a Fiduciary Duty to its Clients*

5. Frontier provides investment advisory services to a variety of clients, including individual retail clients who rely on investments in their Frontier advisory accounts for, among other things, income and retirement. These advisory services include Frontier's agents providing investment advice and managing ongoing client investment portfolios.

6. In exchange for these advisory services, Frontier's clients pay an advisory fee to Frontier, which is an agreed-upon percentage applied to the value of the clients' assets under the firm's management. The fee is periodically deducted from the clients' advisory accounts. As an investment adviser, Frontier is a fiduciary for its advisory clients.

7. As a fiduciary to its clients, Frontier owes an affirmative duty of utmost good faith, is obligated to provide full and fair disclosure of all material facts, has an affirmative obligation to employ reasonable care to avoid misleading its clients, has a duty to act in its clients' best interests, and has a duty to seek best execution of a client's transactions.

8. Frontier's duty to disclose all material facts includes a duty to tell clients about all of its actual or potential conflicts of interest that might incline Frontier or its advisers to render investment advice that is not disinterested.

9. Through its Firm Brochure submitted to the Securities and Exchange Commission ("SEC"), Frontier promises that it will work with the client to complete an investor profile questionnaire to obtain necessary information regarding the client's financial condition, investment objectives, liquidity requirements, risk tolerance, time horizons, and any restrictions on investing. Along with client discussions, Frontier relies on this process to enable it to determine the portfolio best suited for the client's investment objective and needs. Once the client's

investment portfolio has been designed and investments have been allocated, Frontier commits to provide ongoing portfolio review and management services. This approach requires Frontier to review the client's portfolio at least annually and rebalance the portfolio, as it deems appropriate, to meet the client's financial objectives. (March 2016 Firm Brochure, Exhibit A.)

10. Frontier promises that it addresses virtually all aspects of personal finance by way of a personally tailored, custom-developed financial plan. Frontier indicates that the plan is specifically tailored for each client. (*Id.*)

11. Through its Firm Brochure, Frontier also commits that it does not buy securities for itself, or sell securities that it owns, to any client, or as broker or agent accepting securities transactions for compensation for any client. (*Id.*)

12. Frontier has a duty to keep certain records in relation to client accounts. While the list of records advisers have to keep is vast, the one most applicable to documenting client wishes is that advisers must keep "[o]riginals of all written communications received and copies of all written communications sent by such investment adviser relating to: Any recommendation made or proposed to be made and any advice given or proposed to be given." Moreover, Frontier was not relieved of its record keeping and file maintenance obligations with respect to oral communications which also must be documented in Frontier's file in order to meet Frontier's fiduciary duty. Thus, the lack of documentation concerning advice given in relation to investment proposals and suitability of the investments, as well as demonstrating an understanding and compliance with clients' investment directives, would be a breach of the adviser's fiduciary duties.

### *Backgound of Lazzo's Relationship with Frontier*

13. Since 2011, Lazzo has invested personal funds with the assistance of investment advisors at Frontier.

14. On October 27, 2011, Lazzo and Frontier entered into an Investment Management Agreement where they agreed to terms which would govern their relationship (along with Frontier's promises made through its Firm Brochure submitted to the SEC). (Investment Management Agreement, Exhibit B.)

15. When Lazzo began the relationship with Frontier in 2011, he advised Frontier that his investment strategy at that time was moderate to moderate-aggressive. (2011 Investor Profile, Exhibit C.)

16. In a brochure provided to Lazzo, Frontier represented to Lazzo that, among other things, it would comply with Lazzo's stated risk-tolerance when recommending financial products to Lazzo, and that Frontier would review the suitability of each investment to ensure the investment complied with Lazzo's investment goals.

17. In documents provided to Lazzo, Frontier acknowledged that it was in a position of trust with Lazzo and that it would not sell securities that it owned to its clients. (March 2016 Firm Brochure, Exhibit A.)

18. Relying upon Frontier's advice and recommendations, Lazzo entered into a number of investments with Frontier.

19. In 2013, upon Frontier's recommendation, Lazzo invested in a high-risk, private-equity investment called Brightstone, which Mark Lazzo and Frontier discussed at length prior to Lazzo's investment.

20. For the Brightstone transaction, Frontier was fully transparent with Lazzo about the risk of the investment, and Lazzo entered into the investment agreement fully informed.

21. After investing in Brightstone, Lazzo made clear to Frontier that he wanted the remainder of his money with Frontier to be invested in conservative investment products.

22. On September 29, 2016, Frontier prepared a proposed investment portfolio for Lazzo that assumed a "moderate" risk tolerance level. (September 29, 2016, Investment Proposal, Exhibit D.)

23. After reviewing Frontier's September 29, 2016 proposed investment portfolio, Lazzo informed Frontier that the assumed "moderate" risk tolerance level was too risky, and that he desired a less risky investment portfolio for his remaining investments (outside of Brightstone).

24. In response, Frontier prepared an amended proposed investment portfolio to comply with Lazzo's desire for a "conservative" investment strategy. (September 30, 2016, Investment Proposal, Exhibit E.)

25. Through that interaction and others, it was made very clear to Frontier that, with the exception of the private equity investment in Brightstone, Lazzo wanted his portfolio limited to conservative investment products.

### *The Permo Fund*

26. In 2016, Lazzo was approached by Frontier about investing in a financial product called the Frontier Permo Fund, L.L.C. (the "Permo Fund").

27. Frontier, through its agent(s), made numerous representations to Lazzo about the Permo Fund.

28. Lazzo was told that the Permo Fund was a stable investment earning an annual return of 5-7 percent.

29. Lazzo was assured that the Permo Fund met his conservative investment requirements and that it was a low-risk investment. Lazzo was not informed of any significant risk of loss to his original investment in Permo Fund.

30. Lazzo was not told that the Permo Fund made option investments on a short volatility strategy hoping to outguess the futures and options markets.

31. Lazzo was not told that the Permo Fund was high-risk.

32. Lazzo was not told that Frontier had a pecuniary interest in the Permo Fund.

33. After hearing numerous representations concerning the stability and conservative approach of the Permo Fund, Lazzo made investments totaling $580,280.00 into the Permo Fund, beginning in March 2016.

34. Over a span of a few days in February 2018, Lazzo lost approximately $178,000.00 of his investment in the Permo Fund.

35. Based on public information, it appears that during this same time period, the Permo Fund lost more than $16 million, for a total loss of approximately 36% of its total investment corpus.

36. Frontier waited nearly a month before advising Lazzo that the Permo Fund had experienced a 38% drop in value and had been closed out, and that Lazzo had sustained substantial losses.

37. When Lazzo was finally told of his loss by Frontier, it was explained to him, for the first time, the true nature of the investment and the fact that the Permo Fund was buying options based on the market's expected direction.

38. When Lazzo asked Frontier why they put Lazzo in an investment that was inapposite to his stated risk tolerance, Frontier had no explanation and expressly agreed with Lazzo that the investment was not consistent with Lazzo's stated risk tolerance.

39. Frontier repeatedly emphasized to Lazzo that the losses in the Permo Fund were caused by movement in the stock market that was "unforeseeable" and that this was a "black swan" event.

40. Although Frontier blamed the Permo Fund losses on an unforeseeable change in the direction of the market, the reality is that the Permo Fund was a short volatility strategy designed to outguess the futures and options markets.

41. Due to the volatile nature of the Permo Fund, the Permo Fund should not have been sold to Lazzo as a conservative investment.

42. Lazzo should have been told that the Permo Fund included options investments, which Frontier's own documents state "involve greater investment risk."

43. Lazzo should have been told the Permo Fund was wholly inapposite to his stated investment strategy.

44. Frontier misrepresented the nature of the Permo Fund to induce Lazzo to invest despite his clear desire to invest only in conservative investments.

45. Later, Lazzo attempted to obtain more information about the Permo Fund investment and its losses, and requested a copy of his entire investment file from Frontier.

46. Frontier failed to adequately maintain documentation of Lazzo's investment file, thereby breaching numerous duties, including its fiduciary duty to maintain documentation concerning advice given in relation to investment proposals and suitability of the investments, as well as demonstrating an understanding and compliance with Lazzo's investment directives and goals.

47. Frontier failed to comply with its promises and duties set forth in its Firm Brochure submitted to the SEC.

48. Frontier further failed to comply with its fiduciary duties required under State and Federal law.

49. As a direct result of Frontier's actions, Lazzo has suffered damages.

## COUNT I – SECURITIES FRAUD PURSUANT TO THE SECURITIES EXCHANGE ACT OF 1934

50. Lazzo incorporates by reference the allegations contained in Paragraphs 1 through 49 herein.

51. Frontier's representation to Lazzo that the Permo Fund fit his conservative investment strategy was an employment of a device, scheme, or artifice to defraud Lazzo.

52. In violation of 17 C.F.R. § 240.10b-5, Frontier made numerous material misstatements as well as omissions of material facts when it presented the Permo Fund as a conservative investment without explaining the high-risk nature of the investment to Lazzo and by failing to disclose the pecuniary relationship between Frontier and the Permo Fund in an attempt to entice Lazzo to invest in the Permo Fund.

53. Frontier and its agents made these misstatements and omissions willfully.

54. Lazzo's losses are directly attributable to the misstatements.

## COUNT II – VIOLATION OF THE INVESTMENT ADVISORS ACT OF 1940 § 80B-1

55. Lazzo incorporates by reference the allegations contained in Paragraphs 1 through 54 contained herein.

56. Frontier failed to act in good faith and in the best interest of Lazzo when it enticed Lazzo to invest in the Permo Fund.

57. Frontier failed to provide full and fair disclosure of all material facts related to the Permo Fund.

58. Frontier failed to identify and fully explain all conflicts of interest that might induce an advisor to render advice that is not disinterested when it failed to disclose Frontier, and/or its agents, had a pecuniary interest in the Permo Fund.

59. Upon information and belief, Frontier failed to keep sufficient records of Lazzo's investment strategy.

60. Frontier failed to adopt Lazzo's investment goals, objectives, and ends despite full knowledge of the same.

61. As a result of its actions, Frontier is liable to Lazzo for damages.

## COUNT III – BREACH OF FIDUCIARY DUTY

62. Lazzo incorporates by reference the allegations contained in Paragraphs 1 through 61 herein.

63. Lazzo put his confidence in Frontier that Frontier would act in good faith, in the best interest of Lazzo, and would put Lazzo's interests ahead of its own.

64. Frontier failed to act in good faith and in the best interest of Lazzo by misrepresenting or failing to understand the nature of the Permo Fund, failing to follow the stated conservative investment goals of Lazzo, and putting its own pecuniary interests ahead of Lazzo's.

65. As a result of its actions, Frontier is liable to Lazzo for damages.

## COUNT IV – SECURITIES FRAUD PURSUANT TO THE MISSOURI UNIFORM SECURITIES ACT OF 2003

66. Lazzo incorporates by reference the allegations contained in Paragraphs 1 through 65 herein.

67. The Investment Management Agreement between Frontier and Lazzo contains a Missouri choice of law provision, thus the performance of the Investment Management Agreement is subject to the Missouri Uniform Securities Act of 2003.

68. Frontier directly employed a scheme to defraud Lazzo by misrepresenting that the Permo Fund fit Lazzo's conservative investment goals.

69. Frontier, through its agents, made materially false statements and omissions regarding the Permo Fund which constitutes fraud and deceit.

70. Frontier, through its agents, selected an investment for Lazzo that it had no reasonable grounds to believe was suitable for Lazzo, and/or Frontier, through its agents, was not sufficiently knowledgeable about the Permo Fund to assess the suitability of the Permo Fund given Lazzo's stated investment strategy and risk tolerance.

71. As a result of Frontier's false statements, omissions, and actions, Lazzo suffered damages.

72. Due to Frontier's actions, Lazzo is entitled to attorneys' fees, costs, and interest pursuant to Mo. Rev. Stat. §§ 409.5-509(b)(1), 409.5-509(b)(3), and 409.5-509(f)(1).

## COUNT V – NEGLIGENCE

73. Lazzo incorporates by reference the allegations contained in Paragraphs 1 through 72 herein.

74. Frontier had a duty to act as a reasonably prudent investment advisor when providing investment advice to Lazzo and it breached that duty by advising Lazzo to invest in the Permo Fund.

75. Frontier's act in advising Lazzo to invest in the Permo Fund caused Lazzo to be damaged.

## COUNT VI – NEGLIGENT MISREPRESENTATION

76. Lazzo incorporates by reference the allegations contained in Paragraphs 1 through 75 herein.

77. Through its agents, Frontier made negligent misrepresentations to Lazzo when it recommended Lazzo invest in the Permo Fund, given Lazzo's stated risk tolerance.

78. Frontier's negligent misrepresentations caused Lazzo to be damaged.

## COUNT VII – FRAUDULENT INDUCEMENT

79. Lazzo incorporates by reference the allegations contained in Paragraphs 1 through 78 herein.

80. Frontier, through its agents, made false representations of material fact to Lazzo with regard to the Permo Fund.

81. At the time of the representations, Frontier, through its agents, knew the representations to be false or made them recklessly.

82. Frontier made the representations intentionally for the purpose of inducing Lazzo to invest in the Permo Fund.

83. Lazzo sustained damages by relying upon Frontier's false or reckless statements.

## COUNT VIII – FRAUD BY SILENCE

84. Lazzo incorporates by reference the allegations contained in Paragraphs 1 through 83 herein.

85. Frontier had knowledge regarding the Permo Fund that Lazzo did not have, and could not have had, through the exercise of reasonable diligence.

86. Frontier intentionally failed to communicate its knowledge of the Permo Fund to Lazzo, and had a duty to do so.

87. As his investment advisors, Lazzo reasonably relied upon Frontier to provide correct information about the Permo Fund.

88. Lazzo suffered damages as a result of Frontier's failure to communicate the material facts regarding the Permo Fund.

## COUNT IX – BREACH OF CONTRACT

89. Lazzo incorporates by reference the allegations contained in Paragraphs 1 through 88 herein.

90. Frontier and Lazzo executed an enforceable Investment Management Agreement.

91. Frontier has breached the terms of the Investment Management Agreement and its Firm Brochure by failing to act in good faith and in the best interests of Lazzo by misrepresenting or failing to understand the nature of the Permo Fund, failing to follow Lazzo's stated conservative investment goals, failing to keep sufficient documentation of Lazzo's stated investment strategy, by forcing Lazzo to resolve his dispute with Frontier through AAA arbitration and then failing to even register with or follow the requirements of the AAA such that Lazzo's petition for arbitration was refused and denied by the AAA, and by other actions.

92. Lazzo has been damaged as a result of Frontier's breach of the Investment Management Agreement.

WHEREFORE, Lazzo prays for judgment against Frontier:

a. for damages in the amount of $206,761.04;

b. pre and post-judgment interest, costs, and attorneys' fees;

c. punitive damages; and

d. any other or further relief the Court deems just and equitable.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all claims set forth herein.

Respectfully submitted:

 s/ W. Rick Griffin
W. Rick Griffin, #21628
Samantha M. Woods, #25929
645 E. Douglas, Suite 100
Wichita, KS 66201
Tel:  (316) 265-9311
Fax: (316) 265-2955
wrgriffin@martinpringle.com
smwoods@martinpringle.com
*Attorneys for Mark Lazzo*