# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MARK LAZZO,

        Plaintiff,

v.                                       Case No. 20-1075-DDC-JPO

FRONTIER WEALTH MGMT., LLC,

        Defendant.

## MEMORANDUM AND ORDER

This matter is before the court on defendant's Motion to Compel Arbitration and to Stay or Otherwise Dismiss This Proceeding (Doc. 11). Plaintiff filed a Response (Doc. 14). And defendant filed a Reply (Doc. 15). For reasons explained below, the court grants defendant's motion on the terms set forth in this Order.

## I.    Factual Background[1]

Plaintiff is an individual resident of Kansas. Doc. 1 at 1 (Compl. ¶ 1). Defendant is an investment advisory firm. *Id.* at 2 (Compl. ¶ 5). On October 27, 2011, the parties entered an

---

[1]    When deciding a motion to compel arbitration, the "framework is similar to summary judgment practice: the party moving to compel arbitration bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement and the opposing party's failure, neglect, or refusal to arbitrate; if it does so, the burden shifts to the nonmoving party to raise a genuine dispute of material fact regarding the existence of an agreement or the failure to comply therewith." *BOSC, Inc. v. Bd. of Cnty. Comm'rs of Cnty. of Bernalillo*, 853 F.3d 1165, 1177 (10th Cir. 2017) (citation and internal quotation marks omitted). To shoulder their respective burdens under this standard, the parties must come forward with "facts . . . identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *SmartText Corp. v. Interland, Inc.*, 296 F. Supp. 2d 1257, 1263 (D. Kan. 2003) (citing *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000)). When applying this standard, the court views the facts "in the light most favorable to the party opposing arbitration." *BOSC, Inc.*, 853 F.3d at 1177. The court honors this standard here when reciting the facts governing this motion.

Investment Management Agreement under which they agreed to terms governing their relationship.  *Id.* at 4 (Compl. ¶ 14).  The agreement included an arbitration clause.  *See* Doc. 1-2 at 10 (¶ 21).

The clause provides, in part, that disputes and claims "arising out of or related to this Agreement, or the performance of the parties hereunder, shall be resolved by arbitration before the American Arbitration Association or any other arbitration tribunal mutually agreed to by the parties, in accordance with the rules of such tribunal . . . ."  *Id.*

Defendant provided plaintiff with a variety of financial services.  *See* Doc. 1 at 3–5 (Compl.).  Since 2011, plaintiff "has invested personal funds with the assistance of" defendant's "investment advisors[.]"  *Id.* at 3 (Compl. ¶ 13).  Defendant's employee, Shawn Sokolosky, served as the financial advisor for plaintiff and his wife, and also managed at least three business or corporate accounts directly linked to plaintiff's law firm.  Doc. 17 at 1 (Sokolosky Decl. ¶ 3).  Specifically, defendant handled plaintiff's law firm's 401(k), profit-sharing, and pension plans available to all employees of the law firm.  *Id.* (Sokolosky Decl. ¶ 4).

Beginning in March 2016, plaintiff deposited more than half a million dollars into an investment called the "Permo Fund."  Doc. 1 at 6 (Compl. ¶ 33).  In February 2018, plaintiff lost a substantial portion of his Permo Fund investment.  *Id.* (Compl. ¶ 34).

On December 13, 2019, plaintiff filed with the American Arbitration Association (AAA) his Demand for Arbitration under the Consumer Arbitration Rules for claims arising from the Permo Fund investment.  Doc. 14 at 2 (¶ 1); Doc 14-1.  The same day, he served defense counsel with a copy of the Demand.  Doc 14 at 2 (¶ 3).

On December 30, 2019, the AAA's Consumer Filing Team emailed counsel for both parties.  Doc. 14-3 at 1–2.  The Consumer Filing Team notified counsel that the AAA "must

decline to administer this claim and any other claims between [defendant] and its consumers at this time." *Id.* at 1. The AAA explained that "[p]rior to the filing of this arbitration, [defendant] failed to comply with the AAA's policies regarding consumer claims." *Id.* So, the AAA had "administratively closed" the file and noted that it would "refund any payment received by the filing party." *Id.* The AAA notice invited the parties to email the Consumer Filing Team if a party believes the AAA has declined the matter in error. *Id.* The AAA noted that if defendant "wishes for the AAA to consider accepting consumer disputes going forward, [defendant] must, at a minimum, register its clause on the Consumer Clause Registry on [the AAA's] website[.]" *Id.* at 1–2.

On January 8, 2020, defense counsel accepted that invitation and emailed the AAA's Consumer Filing Team. Doc. 16 at 2 (Derby Decl. ¶ 6) (citing Doc. 16-2 at 1). Later that day, the Consumer Filing Team replied and directed defense counsel to contact the "Consumer Review team" for more information. *Id.* (Derby Decl. ¶ 7) (citing Doc. 16-3 at 1). The next day, defense counsel emailed the Consumer Review team asking for more information. *Id.* (Derby Decl. ¶ 8) (citing Doc. 16-4 at 1). Having received no reply from the Consumer Review team, defense counsel sent follow-up emails on January 16, 2020 to both the Consumer Review team and the Consumer Filing Team. *Id.* (Derby Decl. ¶ 9). That same day, defense counsel emailed plaintiff's counsel to explain that defendant had "received a letter from the AAA declining to take the case for some unspecified failure on [defendant's] part" and that defendant was "eager to rectify that but[,]" had "yet to hear back from the AAA as to just what that failure might be." Doc. 16-7 at 1. Defense counsel told plaintiff's counsel that he would "keep [him] posted." *Id.* Defense counsel continued his efforts to secure a response and explanation from the AAA. *See* Doc. 16 at 3 (Derby Decl. ¶¶ 12–17).

On January 30, 2020, plaintiff sent defense counsel a draft Complaint.  *Id.* at 3 (Derby Decl. ¶ 18).  On February 6, 2020, defense counsel responded and suggested that the AAA had dismissed plaintiff's arbitration because plaintiff filed it as a *consumer* arbitration rather than a *commercial* arbitration.  *Id.* at 4 (Derby Decl. ¶ 19); *see also* Doc. 16-10 at 1–3.

Defense counsel also explained to plaintiff's counsel that defendant "does not waive the contractual provision requiring arbitration before the AAA."  Doc. 16-10 at 3.  On February 11, 2020, plaintiff's counsel replied expressing his disagreement with defense counsel's assessment of the problem and explaining that plaintiff viewed the matter as one suitable for arbitration under the AAA's Consumer Rules.  Doc. 16-11 at 1.  Defendant notes that in 2019, defendant resolved a dispute unrelated to plaintiff that had arisen from "a virtually identical arbitration clause" before the AAA's Commercial Arbitration section.  Doc. 16 at 2 (Derby Decl. ¶ 4).

On March 16, 2020, plaintiff filed his Complaint (Doc. 1).  On April 14, 2020, defendant filed its Motion to Compel Arbitration and to Stay or Otherwise Dismiss (Doc. 11).

## II.    Legal Standard

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16*,* requires that a "written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable . . . ."  9 U.S.C. § 2.  Section 3 of the FAA permits the court to stay litigation in favor of arbitration.  The United States Supreme Court interprets the FAA to establish a strong federal policy favoring arbitration and thus requiring "liberal reading of arbitration agreements[.]"  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 n.27 (1983); *see also ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995)

(explaining that the FAA "evinces a strong federal policy in favor of arbitration" (citing *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987))).

When an agreement contains an arbitration clause, "a presumption of arbitrability arises . . . ." *ARW Exploration Corp.*, 45 F.3d at 1462 (citing *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)).  But, "because 'arbitration is a matter of contract' and the authority of an arbitrator arises only from the parties agreement to that forum in advance, 'a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit.'" *Sanchez v. Nitro-Lift Techs., L.L.C.*, 762 F.3d 1139, 1146 (10th Cir. 2014) (quoting *AT & T Techs.*, 475 U.S. at 648–49); *see also Hicks v. Cadle Co.*, 355 F. App'x 186, 192 (10th Cir. 2009) ("[T]he FAA's proarbitration policy does not operate without regard to the wishes of the contracting parties." (citations and internal quotation marks omitted)).

The presumption of arbitrability thus "falls away" when the parties dispute whether a valid and enforceable arbitration agreement exists.  *See Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998) (citation omitted).  A court may compel arbitration "only when satisfied that the 'making' of the agreement to arbitrate is not at issue." *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004) (citation omitted).

With these general principles in mind, the court turns to the parties' arguments whether the court should grant the motion to compel arbitration.

## III.   Discussion

"In deciding whether to grant a motion to arbitrate, courts must resolve whether the parties are bound by a given arbitration clause and whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *Beltran v. AuPairCare, Inc.*, 907

F.3d 1240, 1250 (10th Cir. 2018) (citation and internal quotation marks omitted).  Here, the parties agree.  Their contract contains an arbitration clause and their current dispute falls within the clause's scope.  But, they disagree about the nature of their underlying dispute—is it a consumer-oriented dispute or a commercial dispute—and thus disagree about the arbitration rules which govern it.

Despite their agreement to resolve disputes through arbitration, plaintiff has filed suit in federal court.  *See* Doc. 1 (Compl.).  Plaintiff makes three primary arguments trying to support his assertion that this dispute should remain in federal court.

*First*, plaintiff asserts that he "complied with the arbitration provision by appropriately filing this matter as a consumer arbitration, and [defendant] failed or refused to comply with the AAA's requirements for arbitration, causing the AAA to decline to administer [plaintiff's] claims."  Doc. 14 at 6.  *Second*, because of defendant's "default, the AAA denied administering [plaintiff's] claim and specifically authorized [plaintiff] to file suit."  *Id.* at 12.  Thus, plaintiff argues, this court is his only available venue to litigate the dispute.  And *third*, defendant "waived the requirement to arbitrate this action."  *Id.* at 14.

The court now explains why these arguments fail to persuade the court that it should not compel the parties to resolve this dispute via arbitration.

### A.     The Parties' Dispute About Their Dispute

Much of the conflict here stems from the arbitration clause's failure to specify explicitly which arbitration rules govern disputes subject to the arbitration.  The AAA rules provide that the nature of the agreement influences whether AAA's consumer or commercial rules apply to a dispute arising out of an arbitration clause that fails to specify the governing rule set.

More specifically, AAA's rules provide that (1) the parties shall have made the Consumer Arbitration Rules a part of their arbitration agreement whenever the arbitration agreement is contained within a *consumer agreement*[2] that does not specify a particular set of rules, and (2) the parties shall be deemed to have made the Commercial Arbitration Rules a part of their arbitration agreement whenever they have provided for arbitration by the AAA of a *domestic commercial dispute*[3] without specifying particular rules.  *See* R-1(a)(3), AAA Consumer Arbitration Rules, https://www.adr.org/sites/default/files/Consumer-Rules-Web.pdf (last visited Dec. 18, 2020); R-1(a), AAA Commercial Arbitration Rules, https://www.adr.org/sites/default/files/CommercialRules_Web.pdf (last visited Dec. 18, 2020).

Here, the parties' arbitration clause does not specify explicitly which Rules will govern an arbitration that arises from their agreement.  *See* Doc. 1-2 at 10 (¶ 21).  Whether the consumer rules or commercial rules apply thus depends on whether the parties' underlying agreement or dispute was a consumer or commercial one for purposes of AAA arbitration.  The parties don't see eye to eye on the question.  So, plaintiff filed a Complaint in federal court.  Doc. 1.  And defendant responded by moving to compel arbitration.  Doc. 11.

Defendant asserts that "any question as to the nature of the arbitration proceeding— consumer or commercial—and the applicable set of rules is to be decided by the AAA."  Doc. 15 at 5.  Defendant notes that both (1) the AAA rules governing consumer arbitrations and (2) the AAA rules governing commercial arbitrations foresee that parties may disagree whether a given

---

[2]        "The AAA defines a consumer agreement as an agreement between an individual consumer and a business where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices.  The product or service must be for personal or household use."  R-1, AAA Consumer Arbitration Rules, *supra*.

[3]        The AAA provides some examples of contracts that typically do not meet the criteria for application of the Consumer Rules.  *See* R-1(a), AAA Consumer Arbitration Rules, *supra*.

set of AAA arbitration rules properly applies to a dispute.  *Id.* at 5–6.  Both sets of AAA rules signal that the AAA shall decide such disputes.  *See* R-1(e), AAA Consumer Arbitration Rules, *supra*; R-1(a), AAA Commercial Arbitration Rules, *supra* ("Any disputes regarding which AAA rules shall apply shall be decided by the AAA.").

Defendant asserts that the AAA's claim of authority to decide disputes about the governing AAA rules "should be the end of the matter[,]" and that allowing "the AAA [to] decide which Rules apply is the only result consistent with the Federal Arbitration Act."  Doc. 15 at 5–6.  The court agrees.

The parties agree that (1) their contract contains an arbitration clause, and (2) that clause requires them to submit their dispute over plaintiff's claims to arbitration.  Also, the AAA Rules explicitly recite that AAA decides which arbitration rules govern.  In sum, that issue is not one for the court to decide.  So, plaintiff's first argument, *i.e.*, that he filed appropriately a consumer arbitration, is not persuasive.

But plaintiff argues that he cannot secure any relief via arbitration because defendant already has foreclosed that possibility.  The court now turns to plaintiff's arguments on this point and explains why they fail to persuade the court.

### B.    The Parties' Ability to Arbitrate Instead of Litigating in Federal Court

Plaintiff's presentation of the issue before the court assumes that he cannot secure relief in arbitration, and thus federal court is the only viable venue for his claim.  He argues that the court must deny the motion to compel arbitration because, to grant it, would leave plaintiff stranded in a venueless desert.  Doc. 14 at 1, 5, 17.  But plaintiff's worry, that "arbitration will not occur—leaving [plaintiff] without <u>any</u> forum in which to bring his claims[,]" does not

materialize if he *does* retain the opportunity to arbitrate this dispute. *Id.* at 1. Defendant argues that plaintiff still enjoys that opportunity.

But plaintiff responds that there's no way that is so. He reasons that because the parties' tussle arises out of a *consumer* agreement, rather than a commercial one, the parties must proceed to arbitration under the Consumer Rules. He asserts that (1) he already tried to do that, (2) the AAA rebuffed his attempt to demand arbitration under the Consumer Rules, and (3) defendant is to blame for that outcome. *Id.* at 17. So, he asserts, defendant has rendered arbitration unavailable, and plaintiff is left with the court as his only place to vindicate his rights. *Id.* at 1, 12, 17.

Plaintiff's arguments lean heavily on his characterization of the agreement and dispute as one that is consumer in nature. Indeed, plaintiff labels it "the dispositive question" here. *Id.* at 10. He asserts that resolving defendant's motion to compel arbitration depends on whether the underlying disagreement is a (1) "business dispute" or a "domestic commercial dispute" to which the Commercial Rules apply, or (2) a "dispute between an individual where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices and where the product or service was for personal or household use" to which the Consumer Rules apply. *Id.* (internal quotation marks and bracketing omitted)

Plaintiff notes that Consumer Arbitration Rules govern disputes stemming from arbitration clauses in contracts for standardized, consumable goods or services where the "product or service must be for personal or household use." *Id.* at 7 (quoting Introduction, AAA Consumer Rules, *supra*). Plaintiff also asserts that the "services provided to [plaintiff] were for

his personal and household use." *Id.* at 11 (citing Doc. 14-2 at 2 (Lazzo Aff. ¶ 8)).  So, he argues, the Consumer Rules apply to the dispute arising from their contract, but defendant has boxed him out from arbitration under those Consumer Rules by failing to comply with the AAA's polices for consumer claims.  *See id.* at 17.  Defendant counters, arguing plaintiff neglects to mention defendant's "involvement in creating retirement vehicles for the benefit of all employees of" plaintiff's business.  Doc. 15 at 4.  Defendant argues that "a substantial portion of the financial advice [defendant] rendered concerned [p]laintiff's business as a solo practitioner (Lazzo Law, P.A.) in the establishment and management of profit-sharing, 401(k) and pension plans for the benefit of its employees." *Id.* at 2; *see also id.* at 4 (citing Doc. 17 (Sokolosky Decl.)).[4]  Defendant dubs it "difficult in the extreme to see how [p]laintiff, with full knowledge himself of these facts, can blithely aver that these business-centric services he received from [defendant] were for his personal or household use." *Id.* at 4.

It appears that the contract at issue included some business-oriented services.[5]  This casts doubt on plaintiff's assertion that the disagreement is "[c]learly" a dispute where the product or service contracted for was for personal or household use—the issue that plaintiff deemed "the dispositive question[.]" *Id.* at 10.  The court concludes that it is not so clear.  Under the parties'

---

[4]      The Declaration from defendant's representative attests that "[a]t least three of the accounts [he] managed for the Lazzos were business or corporate accounts directly linked to [plaintiff's] law firm, Lazzo Law P.A."  Doc. 17 at 1 (Sokolosky Decl. ¶ 3).  He attests that "on behalf of the law firm, [defendant] handled its 401(k) and its profit-sharing plans.  These plans both fed into individual retirement accounts at Voya." *Id.* (Sokolosky Decl. ¶ 4).  And defendant's representative notes that defendant also created a defined benefits pension plan for plaintiff, and "[e]ach of these plans was available to all employees of the law firm." *Id.*  Plaintiff never disputes the assertions in defendant's Declaration.  Indeed, plaintiff never requested leave to supplement the record following defendant's filing of this Declaration.

[5]      While the record is not explicit, it appears that the parties' Investment Management Agreement (Doc. 1-2) gave rise to all of the services defendant provided plaintiff.  The parties' assertions and arguments do not suggest that defendant provided plaintiff the business-oriented financial services and personal financial services under two separate investment management agreements.  And, as noted above, plaintiff has not asked for leave to supplement the record given defendant's assertions on this point.

agreement, the parties contracted for various financial services.  Some, it seems, are personal in nature and others are business-oriented.  *See* Doc. 1 at 3–5 (Compl.); Doc. 17 at 1 (Sokolosky Decl. ¶¶ 2–4).  The contract's apparent coverage of business-services also undermines plaintiff's assertion that he "is a consumer under the common understanding of that word and under the AAA's definition[,]" Doc. 14 at 6, given that, as plaintiff points out, the AAA defines the term "consumer" as "an individual who purchases or leases goods or services, or contracts to purchase or lease goods or services, intended primarily for personal, family or household use[,]" *id.* at 7 (citation omitted).

The court cannot conclude—at least on the current record—that the parties' contract is clearly a Consumer Agreement and that a dispute arising out of that agreement necessarily is one to which the AAA's Consumer Rules apply.  Nor can the court conclude from this record that the AAA has decided those issues yet.  These questions remain unanswered.

With that uncertainty, plaintiff's arguments begin to unravel.  *First*, the court looks skeptically upon plaintiff's assertion that federal court is his only remaining venue.  Plaintiff asserts that "the AAA's position in this matter is clear—it will not be administering arbitration on [plaintiff's] claims."  Doc. 14 at 5.  The court is not so certain.  Plaintiff has not filed a demand for arbitration under the Commercial Rules.[6]  So, he has yet to pursue at least one available avenue that may yet lead him to arbitration.[7]

---

[6]     As explained above, if plaintiff files his Demand for Arbitration under the Commercial Rules, he can present his argument in that arbitration proceeding that the Consumer Rules apply.  *See* R-1(a), Commercial Arbitration Rules, *supra* ("Any disputes regarding which AAA rules shall apply shall be decided by the AAA.").

[7]     The court notes also that the parties' arbitration clause also provides that they may resolve by arbitration their disputes before "any other arbitration tribunal mutually agreed to by the parties[.]"  *See* Doc. 1-2 at 10 (¶ 21).  Plaintiff does not address whether this alternative avenue is blocked.

Perhaps plaintiff's assertions ultimately will prove correct—filing his demand for arbitration under the Commercial Rules might *not* grant him access to arbitration.  But that's not the factual circumstance before the court at this time.  And, the court notes, defense counsel asserts that he "previously handled an arbitration for [defendant] before the Commercial Arbitration section of the AAA involving a virtually identical arbitration clause" as recently as spring 2019.  Doc. 16 at 2 (Derby Decl. ¶ 4).

Plaintiff has not come forward with a factual dispute sufficient to support his claim that defendant has "deprived" plaintiff access to arbitration or "unilaterally rescinded" plaintiff's right to arbitrate this case.  *See* Doc. 14 at 17.  Plaintiff's failure to pursue available avenues that may lead the way to arbitration consistent with the parties' arbitration agreement renders his claims of impossibility unpersuasive.  The court thus rejects plaintiff's claim that he is venueless unless this action can proceed in federal court.

*Second*, because it is unclear—and the court does not decide—whether the Consumer Rules even apply, the court cannot accept plaintiff's argument that those rules grant him a right to proceed in court.  *See id.* at 13.  The parties agreed that if they faced a "dispute, claim or controversy . . . arising out of or related to this Agreement, or the performance of the parties" under the contract, then it "shall be resolved by arbitration before the American Arbitration Association . . . ."  Doc. 1-2 at 10 (¶ 21).  The dispute over which AAA ruleset governs the underlying dispute is itself an arbitrable issue.  And plaintiff has not shown that arbitration is unavailable to him.  So, plaintiff must pursue available avenues to attempt to resolve his claims and related disputes by arbitration.

The court now turns to plaintiff's third argument in opposition to the Motion to Compel Arbitration:  waiver.

### C.     Whether Defendant Waived its Right to Arbitration

Plaintiff also argues that defendant waived its right to arbitration.  *See* Doc. 14 at 14.
Plaintiff warns that "because there's no arbitration available to [plaintiff], this case falls outside
of the typical waiver case."  *Id.* at 14.  But, for reasons discussed above, the facts here—even
when viewed in plaintiff's favor—present no genuine issue whether there's arbitration available
to plaintiff.  Arbitration consistent with the parties' arbitration agreement remains, at the least,
potentially available.  That possibility undermines plaintiff's arguments that (1) defendant has
"prevented, by its own actions, the arbitration from occurring" and (2) this case consequently is
not a typical waiver of arbitration rights case.  *Id.*

"A party asserting a waiver of arbitration has a heavy burden of proof."  *Peterson v.
Shearson/Am. Express, Inc.*, 849 F.2d 464, 466 (10th Cir. 1988).  "And in assessing whether that
burden has been met, we give substantial weight to the strong federal policy encouraging the
expeditious and inexpensive resolution of disputes through arbitration."  *Hill v. Ricoh Ams.
Corp.*, 603 F.3d 766, 775 (10th Cir. 2010) (citations and internal quotation marks omitted).  Our
Circuit has held that several factors influence the court's determination whether a party has
waived its right to arbitration.  These factors, commonly called the "*Peterson* factors," include:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2)
> whether the litigation machinery has been substantially invoked and the parties
> were well into preparation of a lawsuit before the party notified the opposing
> party of an intent to arbitrate; (3) whether a party either requested arbitration
> enforcement close to the trial date or delayed for a long period before seeking a
> stay; (4) whether a defendant seeking arbitration filed a counterclaim without
> asking for a stay of the proceedings; (5) whether important intervening steps [e.g.,
> taking advantage of judicial discovery procedures not available in arbitration] had
> taken place; and (6) whether the delay affected, misled, or prejudiced the
> opposing party.

*Peterson*, 849 F.2d at 467–68 (citation and internal quotation marks omitted).  The court's
"overarching consideration is whether the party now seeking arbitration is improperly

manipulating the judicial process." *BOSC, Inc.*, 853 F.3d at 1174 (citation and internal quotation marks omitted).

Here, defendant is the party seeking arbitration. The court concludes that none of the facts here present a question whether defendant "is improperly manipulating the judicial process." *See id.* Defendant's conduct triggers none of the *Peterson* factors. Plaintiff implies that the first *Peterson* factor is satisfied because defendant has acted inconsistent with its right to arbitrate. *See* Doc. 14 at 16. The parties' accounts diverge wildly on this point. Plaintiff argues that defendant's action "made it impossible for [plaintiff] to arbitrate his consumer claim[.]" *Id.* The court already has explained why that argument's persuasive power is limited.

But plaintiff also asserts that defendant "sat on its hands" and "took no action to remedy the defects identified by the AAA." *Id.* at 6. For example, plaintiff asserts that defendant "did not contact the AAA at the email address provided." *Id.* at 3 (¶ 8). But defendant has filed a Declaration from defense counsel attesting that he "sent an email to the address listed in the letter asking for more information." Doc. 16 at 2 (Derby Decl. ¶ 6). Defendant has provided the court with that email. *See* Doc. 16-2 at 1. Contrary to plaintiff's assertion, defendant has presented facts establishing that it engaged in a "Kafkaesque" quest to sort out the problem that impeded the path to arbitration. *See* Doc. 16 at 2–3 (Derby Decl. ¶¶ 5–17).

And defendant told plaintiff that it sought to identify and correct that problem. On January 16, 2020, defense counsel emailed plaintiff's counsel to explain that defendant "received a letter from the AAA declining to take the case for some unspecified failure on [defendant's] part." Doc. 16-7 at 1. In defense counsel's words: "We are eager to rectify that but we have yet to hear back from the AAA as to just what that failure might be. I will keep you posted." *Id.* On February 6, 2020, defense counsel explained to plaintiff's counsel that defendant "does not

waive the contractual provision requiring arbitration before the AAA." Doc. 16-10 at 3. Thus, plaintiff's claim that defendant, after "receiving notice of the AAA's denial to administer arbitration . . . took no action to remedy the situation with the AAA[,]" Doc 14 at 3 (¶ 7), is contradicted by email communication between counsel that defendant has provided the court.

Defendant's conduct here is not as plaintiff describes, and that conduct is far from inconsistent with the right to arbitrate. Thus, the record presents no question whether defendant has acted in a manner inconsistent with the right to arbitrate. So, the court rejects plaintiff's argument that defendant acted inconsistently with a right to arbitration by making it "impossible" for plaintiff to arbitrate his *consumer* claim where, for reasons discussed above, plaintiff has not shown that arbitration consistent with the arbitration agreement is impossible. *Id.* at 16. Given the circumstances here, defendant has not taken actions inconsistent with its right to arbitrate. Thus, the first *Peterson* factor does not show waiver.

Moreover, none of the other *Peterson* factors support a finding that defendant has waived its right to arbitrate. Defendant filed its Motion to Compel Arbitration when the federal court litigation was in its infancy—less than a month after plaintiff filed his Complaint. *See* Doc. 1; Doc 11. And defendant has neither filed a counterclaim nor engaged in discovery procedures. So, the second, third, and fourth *Peterson* factors do not suggest a waiver.

Given the *Peterson* factors and the principles they reflect, the court concludes that plaintiff has not carried his heavy burden to show that defendant waived its right to arbitrate.

## IV.    Conclusion

Plaintiff opposes defendant's motion on the grounds that the AAA will not arbitrate his dispute and thus granting the motion would deny plaintiff any venue where he could litigate his claim. But plaintiff fails to show that the AAA would not arbitrate this dispute if he files his

demand for arbitration under the Commercial Rules or if the parties are able to resolve successfully the issue with the AAA's Consumer Arbitration division.  And perhaps the parties can still, in accordance with their arbitration agreement, resolve the dispute by arbitration before another mutually agreed to arbitration tribunal.

Since the parties' dispute falls within the scope of their valid arbitration clause and arbitration is neither unavailable nor waived at this time, the court finds no genuine issue precluding the parties from proceeding to arbitration.  The court thus grants defendant's motion and stays the district court proceedings.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion to Compel Arbitration and to Stay or Otherwise Dismiss This Proceeding (Doc. 11) is granted, as set forth in this Order.

**IT IS FURTHER ORDERED BY THE COURT THAT** this matter is stayed pending arbitration.

**IT IS FURTHER ORDERED BY THE COURT THAT** defense counsel file with the court a status update about the arbitration proceeding on or before June 4, 2021.

**IT IS SO ORDERED.**

**Dated this 18th day of December, 2020, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree_____**
**Daniel D. Crabtree**
**United States District Judge**